IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KEVIN MICHAEL KNOPE,

                              Plaintiff,                             ORDER

      v.

                                                    16-cv-381-wmc

MATT McELROY,
JENNA SULESKI,

                              Defendants.

*Pro se* plaintiff Kevin Knope is proceeding on Fourth and Fourteenth Amendment claims against defendants Matt McElroy and Jenna Suleski related to Knope's involuntary civil commitment that took place on April 20, 2016. Now before the court is Suleski's motion to dismiss, which, for the reasons that follow, will be granted without prejudice.

ALLEGATIONS OF FACT

In his amended complaint, plaintiff Kevin Knope alleges that on April 20, 2016, Jenna Suleski, a former employee of Journey Mental Health Center, signed a form ordering Knope's involuntary civil commitment during the course of a routine check up at the UnityPoint Meriter Hosptial. Knope alleges that Sun Prairie Police officer Matt McElroy agreed with Suleski and took Knope into custody that day, allegedly based on false claims and without probable cause. Ultimately, Knope was taken to the Winnebago Mental Health Institute, where he was involuntarily committed.

Along with his original complaint, Knope attached several documents related to the April 20 civil commitment. One of the documents is labeled "Statement of Emergency

Detention," which included a sworn statement by officer McElroy that he had reason to believe that Knope was "mentally ill, drug dependent, or developmentally disabled"; that Knope showed "behavior which constitutes a substantial probability of physical harm to self or to others"; and that "taking [Knope] into custody is the least restrictive alternative appropriate." (Dkt. #1-1, at 3.) McElroy also included a more specific statement that on the evening on April 20, 2016, Knope contacted the police department regarding suspected treason. McElroy also wrote that Knope was "displaying erratic, paranoid behavior," and that Kevin reported that "he suffers from bi-polar disorder and psychosocial disorder." (Dkt. #1-1, at 3.)

Neither Suleski's name nor signature appears on any form; rather, they were signed by McElroy and David Roethe, who approved the detention on behalf of the Dane County department of community programs. Knope also attached an Order of Commitment and an Order for Involuntary Medication for Treatment. (Dkt. #1-1, at 5-7.) Neither of these orders were signed by Suleski or included her name. In addition, Knope submitted what he claims are audio recordings of his interactions with both defendants, which are referenced in the complaint. Setting aside admissibility and authentication problems with these recordings, the court reviewed them and heard one instance where Suleski briefly approached and attempted to engage with Knope, but he refused to speak with her and asked her to leave the room. There is no indication in the recordings suggesting that Suleski signed an involuntary civil confinement order.

OPINION

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is only warranted if no recourse could be granted under any set of facts consistent with the allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in a light most favorable to the plaintiff. *Brown v. Budz*, 398 F.3d 904, 907-08 (7th Cir. 2005). However, a "plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

Suleski seeks dismissal from this lawsuit on the basis that Knope's attachments contradict his allegation that she was partially responsible for his April 20, 2016, involuntary civil confinement. Indeed, to be held liable under § 1983, a defendant must have been personally involved in the activity that caused the constitutional deprivation. *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011) (recognizing the "well-established principle of law that a defendant must have been 'personally responsible' for the deprivation of the right at the root of a § 1983 claim for that claim to succeed").

Here, Knope did not file an opposition brief to Suleski's motion to dismiss. Instead, on his opposition deadline, Knope filed a "Notice to Certify," which is a one-page document with at 45-page attachment that he has labeled Exhibit 1. In the notice, Knope

avers that he sent Exhibit 1 -- which consists of his medical records from his visit to the UnityPoint Meriter Hospital on April 20, 2016 -- to defendants Suleski and McElroy. The court has inferred that Knope intends to oppose Suleski's motion to dismiss on the basis of the materials in Exhibit 1, and will consider Exhibit 1 both authentic and central to his claim because it memorializes his experience at the hospital on April 20, 2016. *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

That said, none of the records of Knope's treatment on April 20, 2016, permit a reasonable inference that Suleski had a hand in the April 20, 2016, hospital treatment or his civil commitment. While some notations in his treatment records are illegible, the court has been able to review the provider notes. They reflect that at approximately 7:30 p.m. that day, registered nurse Andrew Bingner triaged Knope upon his arrival at the hospital, and that Knope relayed his concerns about the government. (Dkt. #53-1, at 10.) Then, physician's assistant, Kraig Squires, and treating physician, Karl Nibbelink, examined Knope at approximately 8:00 pm. Squires summarized that police officers brought Knope into the hospital after Knope called the police and reported concerns about the CIA and FBI. (Dkt. #53-1, at 5-6.) Squires wrote that Knope reported a history of bipolar disorder but would not answer questions about his medical and psychiatric history. Squires also wrote that the police officers reported that Knope's wife reported that she was filing for divorce. Squires concluded that because of Knope's "abnormal thought pattern" and the wife's reported safety concern, the plan was to send Knope to Winnebago Hospital for emergency detention and that Squires had spoken with "Winnebago Hospital" about the transfer there.

Exhibit 1 also includes the notes of a social worker, Camil Nuriler, who reported that Knope was taken into custody by "Journey MH and Sun Prairie PD under Wisconsin Chapter 51 Mental Health Commitment." (*Id.* at 12.) Nuriler did not report whether a Journey employee signed a form authorizing the commitment. Finally, Exhibit 1 includes "Patient Transfer and Certification" forms that Knope and a registered nurse, Mustapha Kambi, signed on April 20. (*Id.* at 28-29.)

At most, those records confirm that Knope was receiving treatment at UnityPoint Meriter Hospital on April 20, 2016, but *none* of the records indicate that Suleski signed a commitment order. Rather, like the records Knope attached to his original complaint, Exhibit 1 buttresses the conclusion that Suleski had no involvement in the order authorizing his involuntary civil confinement, and that it was *only* McElroy who was involved in the April 20, 2016, decision to commit him.

Accordingly, while the court will accept that Suleski may have been involved in interviewing Knope at *some* point during the day on April 20, 2016, the record of his treatment and the actual confinement order contradict Knope's allegation that Suleski was responsible for his civil confinement. Therefore, she will be dismissed from this lawsuit. However, that dismissal with be without prejudice to Knope's ability to seek leave of court to amend his complaint to provide specific allegations of exactly how Suleski was responsible for his involuntary civil confinement.

ORDER

IT IS ORDERED that:

1.  Defendant Jenna Suleski's motion to dismiss (dkt. #49) is GRANTED.

2.  Suleski's motion to stay (dkt. #60) is DENIED as moot.

3.  Jenna Suleski is DISMISSED without prejudice.

Entered this 26th day of April, 2018.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge